ORIGINAL

SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 11 2013
CLERK, U.S. DISTRICT COURT
By_____ Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § |
| | § **FILED UNDER SEAL** |
| JASON WYNN (1) | § |
| MARTIN CANTU (2) | § |

INDICTMENT

3-13CR-347-K

The Grand Jury Charges:

### Introduction

1. Beginning no later than May 2007 and continuing until in or about October 2007, defendants **Jason Wynn** and **Martin Cantu** knowingly and willfully conspired with each other, and with others known and unknown to the grand jury, to commit securities fraud by deceiving potential investors regarding ConnectAJet.com, Inc. (CAJT or the company). CAJT was a company that purportedly would provide the first online real-time booking system for private jet charters, similar to other well-known online booking systems.

2. The company's business operations were controlled and managed by defendants **Wynn** and **Cantu**. As part of their scheme to defraud potential investors, defendants **Wynn** and **Cantu** caused public statements and advertisements to be issued that included numerous false and misleading statements, about: (1) the progress and status of the company's real-time booking system, (2) CAJT's relationships with

reputable companies, and (3) CAJT's customer base.

3. These false and misleading statements increased demand for CAJT shares, allowing the defendants and their co-conspirators to sell CAJT shares that they controlled at artificially inflated prices.

### Defendants, Co-Conspirators, and Entities

At all times relevant to this Indictment:

4. Defendant **Jason Wynn** worked as a penny-stock promoter, used-car salesman, and consultant. **Wynn** owned and controlled several corporate entities, including Wynn Holdings, LLC and Wynn Industries, LLC.

5. Defendant **Martin Cantu** owned the majority of shares of CAJT.

6. From in or about July 2007 until on or about October 1, 2007, CAJT's stock was quoted on the Pink Sheets under the symbol "CAJT." On or about October 1, 2007, the Securities and Exchange Commission (SEC) suspended trading of CAJT's stock.

7. Wynn Holdings, LLC was a Minnesota limited liability company with its principal place of business in Dallas, in the Northern District of Texas. It had no business operations other than promotion of unregistered penny stock offerings. Wynn Holdings distributed shares in CAJT's August 2007 unregistered stock offering and promoted CAJT stock in or about September 2007. Defendant **Wynn** was the majority owner, President, Secretary, and Treasurer of Wynn Holdings.

8. Wynn Industries, LLC was a Texas limited liability company with its

principal place of business in Dallas, in the Northern District of Texas. Defendant **Wynn** was the sole owner and President of Wynn Industries.

9. Lugano Funds, LLC was a Minnesota Limited Liability Company formed for the purpose of participating in CAJT's unregistered stock offering. Lugano Funds distributed shares in CAJT's August 2007 offering.

10. Co-conspirator Ryan Reynolds, a former stock broker, operated several entities including Lugano Funds. In 2012, in *United States v. Reynolds*, No. 1:12-CR-20301, in the Southern District of Florida, Reynolds pleaded guilty to conspiracy to commit securities fraud based on his involvement in the CAJT conspiracy.

COUNT ONE
Conspiracy to Commit Securities Fraud
(18 U.S.C. § 371 [15 U.S.C. §§ 78j(b) and 78ff])

11. The allegations contained in paragraphs 1 through 10 are realleged and fully incorporated herein.

12. From in or about May 2007 and continuing thereafter until in or about October 2007, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Jason Wynn** and **Martin Cantu**, did knowingly and willfully conspire with each other, and with other persons both known and unknown to the Grand Jury (the co-conspirators) to commit an offense against the United States, specifically Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, which is to say that the defendants and the co-conspirators agreed that they would willfully and knowingly, and with intent to defraud, by the use of means and instrumentalities of

interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, in connection with the purchase and sale of securities: (a) use and employ manipulative and deceptive devices and contrivances; (b) employ devices, schemes, and artifices to defraud; (c) make untrue statements of material fact and omit to state material facts that were necessary for statements that were made not to be misleading, in light of the circumstances under which the statements were made; and (d) engage in acts, practices, and courses of business that operated or would have operated as a fraud or deceit upon a person.

### Manner and Means of Conspiracy

13. It was part of the conspiracy and the scheme to defraud that defendants **Wynn, Cantu**, and other co-conspirators executed a campaign of false and misleading publicity about CAJT.

14. Using mailings, faxes, print media, and television, the defendants and co-conspirators unleashed press releases and advertising that made materially false and misleading public statements about the operational capabilities, business prospects, relationships with third-party entities, and initial success of CAJT.

15. The press releases and advertising publicity were intentionally designed to lead public investors to believe that the company's real-time online booking system was complete, when in truth and in fact the company failed to ever develop the system past the concept and initial design stage.

16. The statements that were released intentionally represented to public

investors that CAJT had established business relationships with reputable companies when in truth and in fact those companies had no relationship with CAJT.

17. The publicity led public investors to believe that the company had achieved operational success that in truth and in fact it had not achieved.

18. The publicity campaign resulted in an increase in demand for CAJT shares, and an increase in the share price, based on false and misleading information.

19. At the same time, certain co-conspirators, through brokerage accounts that they controlled, regularly purchased shares of CAJT in order to create the appearance of demand for the shares and prevent the share price from decreasing.

20. As the price of CAJT's stock rose, the defendants and their co-conspirators liquidated their holdings of the stock. As a result, the co-conspirators were able to sell, at prices ranging from $1 to nearly $3, shares of CAJT that they had purchased for one penny.

21. One purpose of the conspiracy was that the defendants would and did enrich themselves through the fraudulent manipulation of the CAJT stock.

### Overt Acts in Furtherance of the Conspiracy

22. In furtherance of the conspiracy and to accomplish its objects and purpose, the defendants committed and caused to be committed, in the Northern District of Texas and elsewhere, the following overt acts:

   a. During the period that began in or about May 2007 and continued until in or about July 2007, CAJT sold 10 million shares of CAJT stock for one penny per

share to each of Lugano Funds and Wynn Holdings LLC, which were controlled by Reynolds and defendant **Wynn**, respectively.

    b.    On or about August 27, 2007, an account controlled by defendant **Cantu** received a transfer of 300,000 shares at no cost to defendant **Cantu**.

    c.    On or about August 22, 2007, CAJT's stock started trading publicly.

    d.    On or about August 23, 2007, defendants **Wynn** and **Cantu** caused a press release to be issued for CAJT which stated that "[o]ur 'real-time' booking system has been completed." This statement was intentionally false and misleading, because, in truth and in fact, the booking system remained in the concept and initial design stage.

    e.    From on or about August 23, 2007, through on or about August 30, 2007, defendants **Wynn** and **Cantu** and Reynolds caused to be distributed over 3 million full-color, promotional mailers touting CAJT stock with statements such as "Got Money? The sky's the limit with this stock!" and "Turn $10,000 into $50,000 in weeks!"

    f.    On or about August 28, 2007, defendants **Wynn** and **Cantu** caused the following statements, among others, to be issued by facsimile to hundreds of thousands of fax machines:

- "Connectajet is the World's first real-time booking system for private jet charter (expedia.com for private jets). . . ."
- "The real time system will be implemented within 60 days."
- "After only three trading days, the stock has jumped 150%."

These statements were false and misleading because, in truth and in fact, as the

Indictment – Page 6 of 11

defendants knew, the real-time booking system was not operational, it would not be implemented within 60 days, and the stock price had not increased 150%.

  g. On or about September 4, 2007, defendants **Wynn** and **Cantu** caused a nationally distributed newspaper, USA Today, to publish an advertisement stating that CAJT was "finished with the 'real-time system' for the reservation tool of this evolutionary portal" and would "finish-out the remainder of the testing phase of the new booking tools and begin the implementation within a 60 day period." These statements were false and misleading because, in truth and in fact, as the defendants knew, the real-time system was not finished, the testing phase had not begun, and implementation of the real-time system would not begin within 60 days.

  h. The USA Today advertisement also stated "One of the many benefits to using Connectajet.com for your private charter needs is our affiliation with Flight Aware. Flight Aware stands as the world's most capable and useful flight tracking application. Through this application you can track any aircraft in flight by simply typing in its tail number." This statement was false and misleading because, in truth and in fact, as the defendants knew, CAJT had no affiliation with FlightAware.

  i. On or about September 6, 2007, defendants **Wynn** and **Cantu** caused a press release to be issued which included the statement that CAJT had "submitted a Letter of Intent (LOI) to engage into a charter partnership with Executive Jet Management, a NetJets and Berkshire Hathaway Company." This statement was misleading because, in truth and in fact, there was no affiliation between CAJT and

Indictment – Page 7 of 11

Executive Jet Management or CAJT and NetJets or Berkshire Hathaway.

j. On or about September 20, 2007, defendants **Wynn** and **Cantu** caused a press release to be issued for CAJT which stated that E.S., a person known to the Grand Jury, was a "satisfied" CAJT customer and quoted E.S. as stating "I have chartered many private aircrafts and flying with Connect-A-Jet was one of the most pleasurable experiences of all my travels. . . . I am certain that the next time I am in need of private charter, Connect-a-Jet will connect me to an operator that the provide the same outstanding service." This statement was false and misleading because, in truth and in fact, as the defendants knew, E.S. was not a customer of CAJT and did not have experience chartering private jets, but instead was a friend of defendant **Wynn** and co-conspirator Reynolds, who had simply accompanied defendant **Wynn** and Reynolds on a jet that they had chartered.

k. The defendants, **Wynn** and **Cantu** along with other entities and individuals who were directed by the defendants and co-conspirator Reynolds, intentionally created a false impression of liquidity, trade volume, and market demand for CAJT stock by buying and selling large volumes of CAJT stock in or about August and September 2007. For example, between on or about September 4, 2007 and on or about September 11, 2007, entities controlled by defendant **Wynn** purchased at least 122,600 shares of CAJT stock and sold 95,000 of those shares.

l. From in or about August 2007 through in or about January 2008, entities controlled by defendant **Wynn** sold 4.2 million CAJT shares in the public market,

resulting in profits of $2.585 million.

      m.    From in or about August 2007 through in or about October 2007, **Cantu** realized profits of $548,881 from the sale of 250,000 CAJT shares that he controlled.

      n.    On or about October 26, 2007, in testimony taken under oath, defendant **Cantu** testified falsely concerning the scheme to promote CAJT stock and his involvement in the sale of CAJT stock that he and his relatives controlled.

All in violation of 18 U.S.C. § 371 [15 U.S.C. §§ 78j(b) and 78ff].

## COUNT TWO
### Securities Fraud; Aiding and Abetting
(15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2)

23. The allegations contained in paragraphs 1 through 22 are realleged and fully incorporated herein.

24. From in or about May 2007 and continuing thereafter until in or about October 2007, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants, **Jason Wynn** and **Martin Cantu,** and others, known and unknown to Grand Jury, and aided and abetted by each other, did knowingly and willfully, and with intent to defraud, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities issued by CAJT, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be made untrue statements of material fact and omitting to state facts that were necessary in order for statements that were made not to be misleading, in light of the circumstances under which they were made; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers of CAJT securities.

25. Specifically, the defendants **Wynn** and **Cantu** made and caused CAJT to make materially false and misleading public statements about CAJT's operational capabilities, business prospects, relationships with third-party entities, and the initial

success of CAJT in connection with the purchase and sale of CAJT stock as discussed in paragraphs 1 through 22.

All in violation of Title 15, United States Code, Section 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; and Title 18 United States Code, Section 2.

A TRUE BILL

_____
FOREPERSON

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

_____
P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8812
Email: philip.meitl@usdoj.gov

_____
J. NICHOLAS BUNCH
Assistant United States Attorney
Texas Bar No. 24050352
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8836
Facsimile: 214.767.4100
Email: nick.bunch@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

VS.

JASON WYNN
MARTIN CANTU

SEALED INDICTMENT

18 USC § 371 [15 U.S.C. §§ 78j(b) and 78FF]
Conspiracy to Commit Securities Fraud

15 U.S.C. §§ 78j(b) and 78FF; 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2
Securities Fraud; Aiding and Abetting
2 Count(s)

A true bill rendered:

FORT WORTH _____ FOREPERSON

Filed in open court this 11th day of September A.D. 2013.

Warrants to issue

_____
U.S. MAGISTRATE COURT JUDGE
(Magistrate Court Number: _____ )