IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | §<br>§ | |
| **VS.** | § | **CASE NO. 03:13-CR-00347-K** |
| **JASON WYNN (1)<br>MARTIN CANTU (2)** | §<br>§<br>§ | **JUDGE KINKEADE** |

**MOTION TO DISMISS THE INDICTMENT BASED ON PREJUDICIAL PRE-INDICTMENT DELAY AND A VIOLATION OF THE EX POST FACTO CLAUSE AND BRIEF IN SUPPORT THEREOF**

Defendant Jason Wynn, through counsel, moves the Court to dismiss the pending indictment based on the highly prejudicial delay in obtaining the indictment and a violation of the *Ex Post Facto* Clause.

**BACKGROUND**

1. Sometime in 2005, Jason Wynn, a 23 year old high school dropout working diligently as a car salesman, met and became friends with Ryan Mark Reynolds, a then 34 year old, aggressive, high roller who "worked in the stock market." Wynn eventually went to work for Reynolds unaware that Reynolds had previous sanctions and restrictions implemented by the Securities and Exchange Commission (SEC) against him.

2. The offenses of securities fraud alleged in the indictment are claimed to have occurred between no later than May 2007 and continuing until in or about October 2007.

3. The indictment was filed on or about September 11, 2013, some seventy-one months after the end of the period of the alleged conspiracy, and longer from the time the government began its investigation of the matters alleged in the indictment. The indictment was filed within less than one month of the applicable six year statute of limitations. 18 U.S. Code § 3301.

4. The Securities and Exchange Commission (SEC) formally halted trading of the subject matter securities on October 1, 2007. On March 13, 2008 the SEC filed a civil enforcement action and on December 22, 2008, the SEC filed an Amended Complaint.

5. Beginning on May 20, 2009 and until December of 2009, Jason Wynn met with, and fully cooperated with, various law enforcement agents including, but not limited to, Federal Bureau of Investigation Special Agents, Assistant United States Attorneys, SEC attorneys and investigators. Wynn had no less than a dozen meetings, which produced at least twelve "302s", the majority of which were without counsel and while the SEC civil action was stayed but still pending. Wynn truthfully and willingly provided extensive information and facts regarding the various agencies' investigations especially, and specifically, about ConnectAJet.com, Inc., a company conceived and started by Wynn and the entity that provides the basis for this indictment.

6. On August 21, 2009, the United States Attorney's Office for the Northern District of Texas filed a motion to intervene and an application for stay of proceedings in the SEC civil action pending the completion of a parallel criminal investigation and possible prosecution. The government stated it was actively working on the criminal investigation and attempting to complete it as expeditiously as possible. The gov-

ernment believed the criminal investigation was reasonably likely to be complete in 2010 and that the witnesses and evidence relevant to the criminal matter were likely to be virtually the same as the witnesses and evidence that are relevant to the civil action. On June 24, 2010, the stay expired. *See Case 3:08-CV-00438-B, Documents 204, 205.*

7. From 2008, until the SEC matter was settled by a consent agreement with a judgment filed and entered July 11, 2013 and an Order on Motion to Amend filed September 5, 2013, Wynn was represented by attorney Clouston.

8. Near or about the summer of 2010, and after Wynn had completed full cooperation with law enforcement, Wynn was informed that the government was planning to indict him. Wynn believed that the government was willing to cap his exposure at 18 months and let him argue for as much downward departure as he could successfully achieve, including probation.

9. For over three years, from near or about the summer of 2010 until August 7, 2013, Wynn had absolutely no contact with criminal law enforcement, federal agents or prosecutors. This 36 months of inaction and silence on the part of the government led Wynn and his attorney to believe that the criminal investigation against Wynn had concluded with no action.

10. On April 13, 2012, a felony information was filed in 3:12-CR-00120-K against the alleged ringleader and co-conspirator, Ryan Mark Reynolds.

*11.* On April 18, 2012, a Rule 20 transfer was filed that sent the disposition of the case to the Southern District of Florida where Reynold's was under an April 28, 2011 in-

dictment for securities fraud. Reynold's pleaded guilty to a single count of conspiracy and received a sentence of thirty-nine months. *See Case 1:11-CR-20131-JEM.*

12. Unexpectedly, on August 7, 2013, FBI Special Agents, including agent Ryan Randall, showed up at Wynn's office seeking to talk with Wynn's cousin and employee, Joseph Kim.

14. Immediately, discussions between Wynn's attorney and the AUSA revealed the government's intent to indict and all previous offers, or understandings, and/or considerations of an 18 month cap were no longer offered and Wynn would be treated the same as Reynolds, regardless of Wynn's full cooperation, lesser role and the undue and unexplained delay. Wynn offered to voluntarily surrender and turn himself in at any time, if necessary, and requested that he be allowed to do so.

*15.* On September 19, 2013, at 6:00 a.m., FBI agents started banging on the door of Wynn's home while demanding entry. Wynn's pregnant wife, scared to the point of urinating on herself, opened the door to five agents in tactical gear storming the house. Agent Randall demanded to know "where is Jason?" Wynn's wife explained that Wynn was out of town in Florida on business at a car auction. At the request of Agent Randall, Wynn's wife called Wynn and Randall told him he had an arrest warrant and to return home as soon as possible. Wynn flew home that evening and turned himself in the next day. Downstairs in the Earle Cabell Federal Building, he was handcuffed in front of his wife and parents and taken to court for arraignment.

*16.* The government began an investigation into this matter in 2007, the United States Attorney intervened in 2009 expecting to conclude its investigation in 2010, the stay expired in 2010, the ringleader/co-conspirator was transferred to Florida in 2012

where he was sentenced to 39 months and Wynn was indicted at the last moment in September of 2013. Now, more than seven years after the events which are the subject of this indictment, this defendant is faced with the prospect of defending against allegations that could have been charged many years earlier, at or near the time that co-defendant and ring leader Reynolds was charged, and when memories were fresher and evidence available. As defendant's counsel and investigators waded through the enormous amount of discovery, the case was designated as complex on March 7, 2014. Most likely, it will be determined that certain evidence and/or witnesses are unavailable.

17. The defendant Wynn's rights to Due Process and a right to a fair trial, guaranteed by the Fifth Amendment to the United States Constitution, as well as his Sixth Amendment rights, have been so substantially prejudiced and violated by the above-described pre-indictment delay as to require dismissal of the pending indictment. It is patently unfair to require the defendant to organize and effectively assemble a defense to allegations relating to events occurring more than seven years ago.

18. It is further submitted that the pre-indictment delay was caused by the prosecution's desire to harass or gain tactical advantage over the accused and that said delay was intentional, or at least grossly negligent, on the part of the government.

19. The defendant alleges that said delay may affect the availability of witnesses, records and evidence which may have been available to him if a timely indictment had been returned.

20. The defendant respectfully requests the opportunity to supplement this motion to permit him to make a further showing of prejudice after a full and complete oppor-

tunity to review the discovery which the government has made, and is continuing to make, available and to identify essential witnesses and their availability.

21. Furthermore, the defendant submits that the July 21, 2010 amendment of 18 U.S. Code § 3301 extending the statute of limitations applicable to securities fraud from five years to six years violates the *Ex Post Facto* Clause of Article I of the United States Constitution, and , accordingly, the indictment must be dismissed.

22. The defendant submits that the pre-indictment delay constitutes a manifest injustice.

**LEGAL BASIS AND ARGUMENT**

**I. PRE-INDICTMENT DELAY**

The defendant submits that his due process rights have been violated by the government's extreme and prejudicial delay in obtaining the indictment.

The United States Supreme Court has stated that "the statute of limitations does not fully define [the defendant's] rights with respect to the event occurring prior to indictment." *United States v. Marion*, 404 U.S. 307, 324 (1971). The requirements of fundamental fairness and due process contained in the Fifth Amendment provide further protection against prejudicial pre-indictment delay. *United States v. McDonald*, 456 U.S. 1, 8 (1982).

In *United States v. Lovasco*, 431 U.S. 783 (1977), the Supreme Court explained that the determination as to the existence of a due process violation due to pre-indictment delay is essentially a balancing test whereby the prejudice to the defendant caused by such delay is weighed against the government's justification for the delay. *Id.*, at 790.

"To prove that a delay violated…'fundamental conceptions of justice' a defendant must prove that (1) pre-indictment delay caused substantial prejudice to his right to a fair trial and (2)

the government intentionally delayed the indictment to gain a tactical advantage over the accused." *United States v. Picciandra*, 788 F.2d 39, 42 (1st Cir. 1986) (citing *Marion*); see also *United States v. Lebron-Gonzalez*, 816 F.2d 823, 831 (1st Cir. 1987).

The defendant has the burden of showing "that the prosecution caused the delay solely to disadvantage the defense and that defense suffered actual prejudice." *Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990). Delay which is the product of "bad faith" government acts will satisfy this test but, the court in *United States v. Foxman*, 87 F.3d 1220 (11th Cir. 1996), held that "(i)n context,…'bad faith' means that the government acted to delay an indictment, hoping that the delay - in and of itself – would prejudice the defense. In 'bad faith' cases, the government intentionally acts to delay; and *the tactical advantage sought is the prejudice to the defendant which the government anticipates will flow from the delay*." (emphasis mine).

The delay is significant in this case. It has been more than seven years since the acts alleged purportedly occurred and it was well over three years from the end of the government's communication with defendant until the last minute, unexpected indictment. Again, it is unjust to expect the defendant to mount a defense to these charged offenses so many years later.

Certainly, the government's delay results from a tactical decision to wait until the defendant would be substantially impaired in his defense of these allegations. Why else would the government sit on these allegations for as long as three and half years after the completion of the United States Attorney's investigation? The government's last minute attempt to prosecute the defendant is indicative not only of the tactical advantage it sought by this delay, but also the "negligent and lackadaisical" conduct of the government in this investigation. *United States v. Benjamin*, 28 V.I. 133, 816 F.Supp. 373, 380 (D.V.I. 1993). "[I]n a recent decision,… a sharply

divided Supreme Court departed from *Lovasco's* absolute requirement that the defendant prove deliberate misconduct on the part of the Government." "The majority concluded that 'when the Government's negligence causes delay ... sufficient to trigger judicial review,... and when the presumption of prejudice,... is neither extenuated,...nor persuasively rebutted, the defendant is entitled to relief.'" *Benjamin* citing *Doggett v. United States,* ___ U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Justice Souter, writing for the majority in *Doggett,* reasoned as follows:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupy the middle ground. While not compelling relief in every case where bad-faith delay would make relief automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. *Doggett,* ___ U.S. at ___, 112 S.Ct. at 2693.

The government should be required to explain the inordinate delay. *Id.*

## II. *EX POST FACTO* VIOLATION

"Article I of the United States Constitution provides that neither Congress nor any State shall pass any *ex post facto* law.'" *Miller v. Florida*, 482 U.S. 423, 429 (1987). The Court applied a two-part test:

[F]irst, the law "must be retrospective, that is, it must apply to events occurring before its enactment;" and second "it must disadvantage the offender affected by it."

*Miller* further held that an *ex post facto* violation occurs when the change in the law under consideration alters "substantial personal rights" rather than "modes of procedure which do not affect matters of substance." *Id*. While several Circuits have found no *ex post facto* violation in the extension of the statute of limitations, each of the decisions relied on the view that the change in the law was procedural.

## *III.* CUMULATIVE EFFECT

In *United States v. Benjamin, supra,* the district court dismissed with prejudice an indictment based, in part, on a prejudicial pre-indictment delay of a about three and a half years. Recognizing that dismissal of an indictment based solely on pre-indictment delay "is looked upon with disapproval," the court considered the "combination of all the circumstances" creating prejudice to the defendant in that case. The dismissal itself was predicated on an *ex post facto* violation. *Id*. at 377.

The defendant respectfully urges this Court to similarly examine the cumulative effect of the *ex post facto* violation present here, as well as the impact of the prejudicial Pre-indictment delay, in determining whether the relief sought herein should be granted.

The defendant Wynn is aware of the decision in *United States v. Bartlett*, 794 F2d 1285 (8th Cir. 1986), cert. denied, 479 U.S. 934 (1986), in which the Court held that in order for the defendant to meet his burden of proving actual prejudice flowing from the pre-indictment delay, a defendant must specifically identify witnesses or documents lost during delay and properly attributable to the government. Because the defendant has the burden of showing actual prejudice, he has moved this Court for an opportunity to supplement the motion to dismiss and this brief once he has had an opportunity to review the voluminous documentary discovery provided by the government in order to determine the full effect of the lengthy delay, especially as it relates to business records and prospective witnesses which are no longer available to the defendant.

Wherefore, based on the foregoing arguments and law, the defendant Wynn, through counsel, respectfully moves this Honorable Court for an evidentiary hearing and oral argument on this motion and to dismiss the indictment and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Joe Shearin

JOE SHEARIN
TX State Bar No. 18172300
2515 McKinney Avenue, Suite 1400
Dallas, TX 75201
214.267.1000 main
214.237.0901 fax
joeshearin@shearinlaw.net

Attorney for Jason Wynn

CERTIFICATE OF SERVICE

This is to certify that on this the st day of , 2014, I filed a true and correct copy of the instant Reply using the Eastern District of Texas's Electronic Case Filing system ("ECF") which will send a notice of filing to all counsel of record.

/s/
JOE SHEARIN
Attorney for Jason Wynn