ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST OF TX
FILED

2015 APR 28   AM 9: 04

DEPUTY CLERK

UNITED STATES OF AMERICA

v.

JASON WYNN (1)

NO. NO. 3:13-CR-347-K

## FACTUAL RESUME

The defendant, Jason Wynn, has reviewed with his attorney, Joe Shearin, and acknowledges that he understands in order to establish his guilt for Count One of the Indictment filed against him, namely:   Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 [15 U.S.C. §§ 78j(b) and 78ff], the government would have to prove each of the following elements beyond a reasonable doubt:

*First*:       That the defendant and at least one other person made an agreement to commit the crime of securities fraud, as charged in the Indictment;

*Second:*    That Wynn knew of the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third*:      That one of the coconspirators, during the existence of the conspiracy, knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

In order to prove the underlying offense, that is securities fraud, the government would have to prove each of the following elements beyond a reasonable doubt:

*First:*       That in connection with the purchase or sale of securities, the defendant did any one or more of the following:  (a) employed a device, scheme, or artifice to defraud; or (b) made an untrue statement of material fact or omitted to state a material fact that was necessary in order to make the statements that were made, in the light of the circumstances under

which they were made, not misleading; or (c) engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon any person.

*Second:*    That the defendant acted willfully, knowingly, and with intent to defraud; and

*Third:*    That the defendant used, or caused to be used, the mails or a means or instrumentality of interstate commerce in furtherance of the scheme.

## Stipulated Facts

From in or about May 2007 and continuing thereafter until in or about October 2007, in the Dallas Division of the Northern District of Texas and elsewhere, Jason Wynn, did knowingly and willfully conspire with other persons, including but not limited to Martin Cantu, Ryan Reynolds, and others, (the co-conspirators) to commit an offense against the United States, specifically Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, which is to say that the co-conspirators agreed that they would willfully and knowingly, and with intent to defraud, by the use of means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, in connection with the purchase and sale of securities: (a) employ devices, schemes, and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts that were necessary for statements that were made not to be misleading, in light of the circumstances under which the statements were made; and (c) engage in acts, practices, and courses of business that operated or would have operated as a fraud or deceit upon a person and, more specifically, by deceiving potential investors regarding ConnectAJet.com, Inc. (CAJT or the company).

CAJT was a company that purportedly would provide the first online real-time booking system for private jet charters, similar to other well-known online booking systems. The company's business operations were controlled and managed by Cantu and he was assisted in that regard by Wynn who served as a consultant. From in or about July 2007 until on or about October 1, 2007, CAJT's stock was quoted on the Pink Sheets under the symbol "CAJT." On or about October 1, 2007, the Securities and Exchange Commission (SEC) suspended trading of CAJT's stock. As part of the scheme to defraud potential investors, Wynn and Cantu caused public statements and advertisements to be issued that included false and misleading statements, about: (1) the progress and status of the company's real-time booking system, (2) CAJT's relationship with reputable companies, and (3) CAJT's customer base. These false and misleading statements were intended to increase demand for CAJT shares, allowing the co-conspirators to sell CAJT shares that they controlled at inflated prices.

During the conspiracy, Wynn owned and controlled several corporate entities, including Wynn Holdings, LLC and Wynn Industries, LLC. Cantu owned the majority of shares of CAJT.

It was part of the conspiracy and the scheme to defraud that Wynn, Cantu, Reynolds and other co-conspirators executed a campaign of false and misleading publicity about CAJT. Using mailings, faxes, print media, and television, the co-conspirators published press releases and advertising that made materially false and misleading public statements about the operational capabilities, business prospects, relationships with third-party entities, and initial success of CAJT. The press releases

and advertising publicity were intentionally designed to lead public investors to believe that the company's real-time online booking system was complete, when in truth and in fact the company failed to ever develop the system past the concept and initial design stage. A statement that was released intentionally represented to public investors that CAJT had established a business relationship with reputable companies when in truth and in fact that company had no relationship with CAJT. The publicity was intended to increase the demand for CAJT shares and increase the share price, based on false and misleading information.

As part of the conspiracy, Wynn provided Reynolds discretionary trading authority over all CAJT stock held by Wynn and the Wynn entities. Having control over these accounts, Reynolds traded the CAJT shares in a manner that created the appearance of demand for the shares and prevented the share price from decreasing. As the price of CAJT's stock rose, certain co-conspirators liquidated their holdings of the stock. As a result, the co-conspirators were able to sell, at prices ranging from $1 to nearly $3, shares of CAJT that they had purchased for as little as one penny.

CAJT's stock started trading publicly on or about August 22, 2007. The next day, on or about August 23, 2007, Wynn and Cantu caused a press release to be issued for CAJT which stated that "[o]ur 'real-time' booking system has been completed." This statement was intentionally false and misleading, because, in truth and in fact, the real-time online booking system remained in the concept and initial design stage.

On or about August 28, 2007, Wynn and Cantu caused the following statements, among others, to be issued by facsimile to hundreds of thousands of fax machines:

- "Connectajet is the World's first real-time booking system for private jet charter (expedia.com for private jets). . . ."
- "The real time system will be implemented within 60 days."
- "After only three trading days, the stock has jumped 150%."

These statements were false and misleading because, in truth and in fact, as the co-conspirators knew, the real-time booking system was not operational and it would not be implemented within 60 days and the stock price had not increased 150%.

On or about September 4, 2007, Wynn and Cantu caused a nationally distributed newspaper, USA Today, to publish an advertisement stating that CAJT was "finished with the 'real-time system' for the reservation tool of this evolutionary portal" and would "finish-out the remainder of the testing phase of the new booking tools and begin the implementation within a 60 day period." These statements were false and misleading because, in truth and in fact, as the coconspirators knew, the real-time system was not finished, the testing phase had not begun, and implementation of the real-time system would not begin within 60 days.

The USA Today advertisement also stated "One of the many benefits to using Connectajet.com for your private charter needs is our affiliation with Flight Aware. Flight Aware stands as the world's most capable and useful flight tracking application. Through this application you can track any aircraft in flight by simply typing in its tail number." This statement was false and misleading because, in truth and in fact, as the co-conspirators knew, CAJT had nothing more than a link to the FlightAware website.

On or about September 6, 2007, Wynn and Cantu caused a press release to be

issued which included the statement that CAJT had "submitted a Letter of Intent (LOI) to engage into a charter partnership with Executive Jet Management, a NetJets and Berkshire Hathaway Company." As Wynn knew, the intent of this statement was to indicate a relationship between CAJT and Executive Jet Management, a NetJets and Berkshire Hathaway Company, when no such relationship existed.

On or about September 20, 2007, Wynn and Cantu caused a press release to be issued for CAJT which stated that E.S., a person known to the Grand Jury, was a "satisfied" CAJT customer and quoted E.S. as stating "I have chartered many private aircrafts and flying with Connect-A-Jet was one of the most pleasurable experiences of all my travels. . . . I am certain that the next time I am in need of private charter, Connect-a-Jet will connect me to an operator that the provide the same outstanding service." This statement was false and misleading because, in truth and in fact, as the co-conspirators knew, E.S. was not a customer of CAJT and did not have experience chartering private jets, but instead was a friend of Ryan Reynolds, who had simply accompanied defendant Wynn and Ryan Reynolds on numerous jets that they had chartered.

From in or about August 2007 through in or about January 2008, and through co-conspirator Ryan Reynolds, entities owned by defendant Wynn sold 4.2 million CAJT shares in the public market, resulting in gross profits of $2.585 million. This does not take into consideration the cost of all shares acquired by Wynn, and may not take into consideration all of the CAJT open market purchases made on behalf of Wynn, nor the monies paid by Wynn to, or on behalf of, CAJT for vendors, overhead and operations.

This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case.  The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support Wynn's guilty plea to Count One set forth in the Indictment.


_____          4/27/15
P.J. MEITL                                          Date
Assistant United States Attorney
Virginia Bar No. 73215
D.C. Bar No. 502391
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  (214) 659-8600
Facsimile:  (214) 659-8812
Email: philip.meitl@usdoj.gov


_____          4/27/15
JASON WYNN                                      Date
Defendant


_____          4-27-15
JOE SHEARIN                                      Date
Attorney for the Defendant